IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRET WADE,     *

    Plaintiff     *

v.     *     Civil Case No. 17-01371-JMC

ERIN CHANEY FOSTER,     *

    Defendant.     *

\* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff, Mr. Bret Wade, filed[1] a "Complaint for Defamation" against Defendant, Ms. Erin Colleen Foster, following a sexual encounter that occurred on the evening of July 29, 2016 between Mr. Wade, Ms. Foster, and others. In his Complaint, Mr. Wade alleges that following their sexual encounter, Ms. Foster knowingly made false and defamatory representations to the "Kink Community"[2] that Mr. Wade had violated her consent during the sexual encounter. (COMPLAINT, ¶ 33; ECF No. 2). Those misrepresentations, Mr. Wade alleges, destroyed his reputation in the Kink Community and caused him damages in the amount of $1,500,000.00. (COMPLAINT, ¶ 50).

In response to those allegations, Ms. Foster filed her Answer,[3] (ANSWER; ECF No. 11), in which she generally denied Mr. Wade's claims of defamation and asserted several affirmative defenses. Further, Ms. Foster stated that on the night in question, she was "so intoxicated that she

---

[1] Mr. Wade originally filed his Complaint in the Circuit Court for Howard County, Maryland. The case was subsequently removed to this Court on the basis of diversity jurisdiction. (ECF Nos. 1-2).

[2] The pleadings describe the "Kink Community" as a "closely-knit group of adults who engage in erotic practices including, but not limited to: bondage, discipline, dominance, submission, and other adult-themed activities." (COMPLAINT, ¶ 33; ECF No. 2)

[3] This filing is labeled as "Corrected Answer" on the docket because of minor and insignificant corrections made to an earlier submission.

1

was unable to voluntarily consent to sexual activity," and that following that sexual encounter, Mr. Wade made false statements to others that Ms. Foster had lied about what had occurred. (ANSWER, pg. 9-10). Thus, she included with that Answer a Counterclaim section (hereinafter, "original Counterclaim"), in which she set forth five (5) claims, including: (1) battery, (2) assault, (3) intentional infliction of emotional distress, (4) abuse of process, and (5) defamation. (ORIGINAL COUNTERCLAIM; ECF No. 11).

Thereafter, Mr. Wade filed a "Motion for Partial Dismissal of [Ms. Foster's] Counterclaim." (MOTION FOR PARTIAL DISMISSAL; ECF No. 18). In that motion, Mr. Wade argues that pursuant to Federal Rule of Civil Procedure 12(b)(6), Ms. Foster's claims of intentional infliction of emotional distress (Count 3), abuse of process (Count 4), and defamation (Count 5) must be dismissed as a matter of law because those claims, Mr. Wade avers, "contain[] nothing more than bald allegations, conclusory statements, and hyperbole," and as a result, do not "rise to the level of a formulaic recitation of the appropriate elements of the causes of action she has alleged." (MOTION FOR PARTIAL DISMISSAL, pg. 1). Rather than responding directly to that motion, Ms. Foster filed an Amended Counterclaim, (AMENDED COUNTERCLAIM; ECF No. 25), in which she dropped her abuse of process claim and provided additional details in support of her intentional infliction of emotional distress and defamation claims. That same day, Ms. Foster filed a "Motion for Extension of Time," (MOTION FOR EXT. OF TIME; ECF No. 26), asking this Court to clarify whether she is required to respond directly to Mr. Wade's Motion for Partial Dismissal, now that her Amended Counterclaim addressed the purported defects identified in Mr. Wade's Motion.[4]

---

[4] In that filing, Ms. Foster did not concede to the alleged errors outlined in the Motion for Partial Dismissal. Rather, she stated that she submitted an Amended Counterclaim as "a matter of course."

The Court then issued an order staying the deadline by which Ms. Foster was required to file a response to the Motion for Partial Dismissal, (ECF No. 27), so that the Court would have sufficient time to review these materials and render a decision. Following that order, Mr. Wade filed a "Second Motion for Partial Dismissal of Counterclaim or, in the Alternative, Motion for Summary Judgment," (ECF No. 28),[5] and Ms. Foster followed with a response in opposition. (ECF No. 31).

As a preliminary matter, the Court notes that there is no dispute about the timeliness or procedural propriety of Ms. Foster's Amended Counterclaim. As Ms. Foster notes, by operation of Federal Rule of Civil Procedure 15(a)(1)(A), she was permitted "as a matter of course" (that is, without leave of the Court) to amend her original Counterclaim following Mr. Wade's Motion for Partial Dismissal, and she timely did so by filing an Amended Counterclaim under the twenty-one (21) day time frame permitted under Rule 15. Therefore, the sole issue presently before the Court is whether the additions and clarifications that Ms. Foster has made in her Amended Counterclaim address the alleged defects that are outlined in Mr. Wade's Motion for Partial Dismissal and reiterated in his Second Motion for Partial Dismissal. In making this determination, the Court has reviewed the above materials, and finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Mr. Wade's Motion for Partial Dismissal and his Second Motion for Partial Dismissal or, in the Alternative, for Summary Judgment are denied.

---

[5] Because Mr. Wade's motions substantively make the same arguments, the Court will refer to these motions collectively as Mr. Wade's Motion for Partial Dismissal, though in doing so, the Court addresses the subtle differences and caselaw contained in each. Moreover, given that the Court resolved this dispute without looking outside of the pleadings, the Court views this motion as a Motion for Partial Dismissal, rather than a motion for summary judgment. Accordingly, Mr. Wade is not precluded from filing a motion for summary judgment later in this case.

3

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Hejazi v. Oliveri & Assocs., LLC, No. CIV. CCB-14-02974, 2015 WL 3447660, at *2–3 (D. Md. May 27, 2015) (citing Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir.2006)) (internal quotation marks and alterations omitted). When ruling on a Rule 12(b)(6) motion to dismiss, this Court "must 'accept the well-pled allegations of the complaint as true' and 'construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.'" Id. (citing Ibarra v. United States, 120 F.3d 472, 474 (4th Cir.1997)). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." Id. (citing Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir.2009)).

In order to "survive a motion to dismiss, the factual allegations of a complaint," or here the Counterclaim, "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Accordingly, the one bringing such claims—here Ms. Foster—must "set forth sufficiently the 'grounds of his entitlement to relief,' offering 'more than labels and conclusions.' Id. Consequently, "[i]t is not sufficient that the well-pled facts create 'the mere possibility of misconduct.'" Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Rather, to withstand a motion to dismiss, 'a [counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,'

meaning the court could draw 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (citing Iqbal, 556 U.S. at 678).

As Ms. Foster correctly notes, "an amended complaint ... generally moots any pending motions to dismiss because the original complaint is superseded." Due Forni LLC v. Euro Rest. Sols., Inc., No. PWG-13-3861, 2014 WL 5797785, at *2 (D. Md. Nov. 6, 2014) (citations omitted). "Yet, a pending motion to dismiss is not mooted under all circumstances, and [the party that filed the motion to dismiss] should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." Due Forni, 2014 WL 5797785, at *2 (citations, quotations and brackets omitted). "Rather, if some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." Id. (citations, quotations and brackets omitted).

Accordingly, as a general matter, it is possible that Ms. Foster's Amended Counterclaim, which sought to address the defects alleged by Mr. Wade, has rendered Mr. Wade's first Motion for Partial Dismissal moot. However, given that Mr. Wade filed a second motion for Partial Dismissal, the Court will review the original Counterclaim at issue, the defects alleged in both of Mr. Wade's Motions for Partial Dismissal, and the corrected status of Ms. Foster's claims as set forth in her Amended Counterclaim. In doing so, the Court's review will be limited only to the claims intentional infliction of emotional distress (Count 3) and defamation (Count 5), as Ms. Foster's other claims were either voluntarily dropped or were not subjects of Mr. Wade's Motion for Partial Dismissal.

Intentional Infliction of Emotional Distress

In order to bring a claim for intentional infliction of emotional distress under Maryland law, the claimant must plead facts showing that: (1) The conduct at issue is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. Hejazi, 2015 WL 3447660, at *6; see also Harris v. Jones, 380 A.2d 611, 614 (Md. 1977). "Recovery under this theory of liability has been severely limited in Maryland to the most extreme cases of uncivilized behavior." Bryant v. Better Bus. Bureau of Greater Maryland, Inc., 923 F. Supp. 720, 746 (D. Md. 1996). Maryland courts have explained that "'[i]n developing the tort of intentional infliction of emotional distress, whatever the relationship between the parties, recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" Figueiredo–Torres v. Nickel, 584 A.2d 69, 75 (Md. 1991) (quoting Hamilton v. Ford Motor Credit Co., 502 A.2d 1057, 1065 (Md. App. 1986)); see also Hejazi, 2015 WL 3447660, at *6 ("The tort of intentional infliction of emotional distress is 'rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct'") (citing Snyder v. Phelps, 580 F.3d 206, 231 (4th Cir.2009)).

In her original Counterclaim, Ms. Foster alleged that Mr. Wade, without her consent, "tied and bound [her] while [she] was unconscious," and then proceeded to engage in "penetrative sexual activity with [her]" while she remained unconscious. (ORIGINAL COUNTERCLAIM, pg. 9). Further, Ms. Foster stated that following this sexual encounter, Mr. Wade "falsely told others that [she] made false statements about him." This conduct, she asserted, was "wrongful, extreme and outrageous and caused [her] extreme and severe emotional distress."

In his Motion for Partial Dismissal, Mr. Wade argues that Ms. Foster has not sufficiently pled the fourth element for a claim of intentional infliction of emotional distress: the severity of the emotional distress. In so arguing, Mr. Wade points to Cuffee v. Verizon Commc'ns, Inc., wherein this Court explained that "[t]o satisfy this [fourth] element, [the claimant] must plead facts showing that she suffered a 'severely disabling emotional response,' so acute that 'no reasonable man could be expected to endure it.'" 755 F. Supp. 2d 672, 680–81 (D. Md. 2010) (citing Moniodis v. Cook, 494 A.2d 212, 219 (Md.App.1985)). Mr. Wade contends that Ms. Foster's Counterclaim contains only conclusory allegations about the harm she suffered, and that without more those allegations do not meet the required showing of a severely disabling emotional response.

Seeking to cure any deficiencies in her original pleading, Ms. Foster's Amended Counterclaim expounds on the emotional distress that she claims to have suffered as a result of the alleged conduct. Specifically, she explains that: following the incident, she "suffered from anxiety and depression" which included daily "flashbacks and intrusive thoughts about the assault"; she experienced "difficulty focusing on her work" and "has been less productive at work"; she had difficulty sleeping because of nightmares about the alleged sexual assault; she has been unable to leave her house "to visit family, friends or even to buy groceries"; she is scared of being home alone and has now developed a fear of men; she has difficulty performing in Burlesque shows, which was an activity she had done professionally, because of feelings of vulnerability and anxiety; and she has been seeing a psychotherapist who diagnosed her with post-traumatic stress disorder from the sexual assault. (ECF No. 25, ¶¶ 15-23).

"To show that the alleged distress was sufficiently 'severe,'" as the fourth element for a claim of intentional infliction of emotion distress requires, parties bringing such claims "must

7

plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." Smith v. Aita, No. CIV.A. ELH-14-3074, 2014 WL 7359503, at *3 (D. Md. 2014) (citing Chin v. Wilhelm, CCB–02–01551, 2006 WL 827343, at *9 (D. Md. 2006). Such facts "must give rise to the inference that [plaintiff was] 'severely emotionally disabled,'" which is to say that [she was] rendered "unable to function" or "attend to necessary matters." Smith, 2014 WL 7359503, at *3 (citing Pemberton v. Bethlehem Steel Corp., 502 A .2d 1101, 1115 (Md. App. 1986)). In other words, Maryland law recognizes "[s]evere distress [as] that which 'no reasonable man could be expected to endure,'" Takacs v. Fiore, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (citing Harris, 380 A.2d at 616), and this standard is met where the "emotional distress is so severe as to have disrupted [the individual's] ability to function on a daily basis." Takacs, 473 F. Supp. 2d at 652 (citing Bryant, 923 F.Supp. at 750).

Nonetheless, "[w]hile the emotional distress must be severe, it need not produce total emotional or physical disablement." Figueiredo-Torres v. Nickel, 584 A.2d 69, 76 (Md. 1991) (internal citations omitted). Moreover, in evaluating the severity of the emotional distress, Maryland law requires that courts consider not only the alleged harm and emotional distress itself, but also the egregiousness of the conduct giving rise to such harms. See B.N. v. K.K., 538 A.2d 1175, 1182 (Md. 1988) ("The nature of the conduct itself may provide evidence of the severity of the distress. That is, if the acts of the defendant are so horrible, so atrocious and so barbaric that no civilized person could be expected to endure them without suffering mental distress, [a] jury may find as a matter of fact that 'severe' emotional distress resulted") (internal citations and quotations omitted). Additionally, Maryland law recognizes that "[i]n cases where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress," such "conduct will be carefully scrutinized by the courts." Figueiredo-Torres, 584 A.2d at 75.

8

In Batson v. Shiflett, 602 A.2d 1191 (Md. 1992), the Court of Appeals discussed at great length the level of distress and type of egregious conduct that is required for a tort of intentional infliction of emotional distress. In that decision, the Court of Appeals cited three cases where it upheld such claims: Figueiredo-Torres v. Nickel, 584 A.2d 69 (Md. 1991) (where a psychologist had sexual relations with the plaintiff's wife during the time when he was treating the couple as their marriage counselor); B.N. v. K.K., 538 A.2d 1175 (Md. 1988) (where a physician did not inform a nurse, with whom he had sexual intercourse, that he had herpes); and Young v. Hartford Accident & Indemnity, 492 A.2d 1270 (Md. 1985) (where a worker's compensation insurer's "sole purpose" in insisting that claimant submit to psychiatric examination was to harass the claimant and force her to abandon her claim or to commit suicide). In particular, in B.N, the Court of Appeals upheld a claim of intentional infliction of emotional distress where a physician did not inform a nurse, with whom he had sexual intercourse, that he had herpes. 538 A.2d 1175 (Md. 1988). In doing so, the Court explained that the alleged conduct was sufficiently egregious because: "We are not dealing here with mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. We do not have the simple rudeness and annoying collection efforts that were found not outrageous…, or the bad taste and poor judgment." B.N., 538 A.2d at 1181. By contrast, the Court of Appeals also mentioned several cases where they "have refused to recognize the cause of action provide" because the alleged conduct was not sufficiently egregious. In particular, the Court pointed to Gallagher v. Bituminous Fire & Mar. Ins., 492 A.2d 1280 (Md. 1985) (where the wrongful conduct involved an insurer's failure to make timely benefit payment) and Vance v. Vance, 408 A.2d 728 (Md. 1979) (where the defendant misrepresented that he was divorced at the time of his marriage to the plaintiff).

In light of the above principles and caselaw, the Court is satisfied that these new assertions in Ms. Foster's Amended Counterclaim disperse of any deficiencies outlined in Mr. Wade's Motion for Partial Dismissal. Here, the alleged conduct—that Ms. Foster, who was a house guest of Mr. Wade's at the time, was bound up and sexually assaulted without her consent as she was unconscious— is quite disturbing, and it falls more in line with the three cases discussed above where the Court of Appeals upheld claims for intentional infliction of emotional distress, especially when Mr. Wade called into question the veracity of Ms. Foster's account.

As warned in B.N., Ms. Foster's allegations are not trivial, nor are they mere inconveniences or the result of simple annoyances. If true, such conduct could result in persistent, life-altering, and debilitating consequences for Ms. Foster, which as she alleges, have already occurred. Indeed, in describing the "nature, intensity, and duration" of her emotional distress, Ms. Foster has explained that she has become recluse and unable to function or attend to daily life without significant difficulty. For instance, she alleges her inability to work, sleep, leave her house, or visit family members and friends. She also notes that she has obtained professional help to deal with these issues, which has led to a diagnosis of post-traumatic stress disorder. Accordingly, the Court finds that Ms. Foster has plead sufficient facts to survive Mr. Wade's Motion for Partial Dismissal on the count of intentional infliction of emotional distress.

Mr. Wade also relies on this Court's decision in Takacs v. Fiore, 473 F.Supp.2d 647 (D. Md. 2007). Although it is true, as Mr. Wade points out, this was a case in which this Court dismissed an intentional infliction of emotional distress claim where an employer sexually assaulted one of his employees on numerous occasions. Nonetheless, contrary to Mr. Wade's suggestion, the Court did not dismiss that claim because of the conduct at issue. That is to say, Takacs does not stand for the proposition that an intentional infliction of emotional distress claim

is generally not appropriate in cases of alleged sexual assault. Rather, the Court dismissed the claim because, as we stated in that decision, "[w]hile Ms. Takacs alleges debilitating conditions, including severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach, she does not allege that she has been unable to function on a daily basis…". Id. at 653 (citations to the record and quotations omitted). As a result, Mr. Wade's reliance is on this case is misplaced because Ms. Foster, unlike the plaintiff in Takacs, has clearly pled debilitating conditions that affect her life on a daily and routine basis as required under Maryland law.

Defamation

"In order to plead properly a defamation claim under Maryland law, [the party bringing the claim] must allege specific facts establishing four elements to the satisfaction of the fact-finder: '(1) that the [alleged tortfeasor] made a defamatory statement to a third person, (2) that the statement was false, (3) that the [the alleged tortfeasor] was legally at fault in making the statement, and (4) that [the party bringing the claim] thereby suffered harm.'" Piscatelli v. Van Smith, 35 A.3d 1140, 1147 (Md. 2012) (citing Indep. Newspapers, Inc. v. Brodie, 966 A.2d 432, 448 (Md. 2009)). For the first element, a defamatory statement is one that "tends to expose a person to public scorn, hatred, contempt, or ridicule, which, as a consequence, discourages others in the community from having a good opinion of, or associating with, that person." Ruyter v. Maryland CVS Pharmacy, LLC, No. CIV.A. TDC-14-2541, 2015 WL 759425, at *5 (D. Md. Feb. 20, 2015) (citations and internal quotation marks omitted). As for the second element, "a false statement is on that is not substantially correct." Id. (citation and internal quotation marks omitted). Establishing the third element—that an alleged tortfeasor is legally at fault—"requires a showing that the party making the false statement acted negligently or with actual malice." Id. (citation and internal quotation marks omitted). Regarding the fourth and final element, "harm is

11

presumed if the statement was defamatory *per se,* in that the injurious character of the statement is self-evident, and if the plaintiff can demonstrate actual malice," which is "established by showing that the speaker made the statement with actual knowledge that it was false or with reckless disregard for its truth." Id. (citation and internal quotation marks omitted).

To satisfy the federal pleadings standard, the party bringing the claim "must specifically allege each defamatory statement." Doe v. Salisbury University, 123 F. Supp. 3d 748, 757 (D. Md. 2015) (citations omitted); English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc., 172 F.3d 862 (4th Cir. 1999) ("Each act of defamation is a separate tort that, in most instances, a plaintiff must specifically allege"). That is to say, "a plaintiff should allege specific defamatory comments [including] 'the time, place, content, speaker, and listener of the alleged defamatory matter.'" English Boiler, 172 F.3d at 862 (quoting Wiggins v. Phillip Morris, Inc., 853 F.Supp. 458, 465 (D.D.C.1994)). Ultimately, "[t]o determine whether a publication is defamatory, a question of law for the court, the publication must be read as a whole: 'words have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed.'" Piscatelli, 35 A.3d at 1147 (citing Chesapeake Publ'g Corp. v. Williams, 661 A.2d 1169, 1174 (Md. 1995)).

In her original Counterclaim, Ms. Foster states that

> After the events which occurred on or about July 29, 2016 Plaintiff, acting directly or through threatening letters sent by Plaintiff's attorney, on Plaintiff's behalf, falsely claimed to others, orally and in writing, including (but not limited to) by the mechanism of this lawsuit, that Defendant had lied about Plaintiff engaging in unconsented sexual activity with Defendant.

(ECF No. 11, ¶ 15). Elsewhere, in that original Counterclaim, she asserts:

> [Mr. Wade] made oral and published written statements to others tending to expose [her] to public scorn, hatred, contempt, or ridicule to third persons who reasonably recognized the statement as being defamatory; these statements were

12

false; [Mr. Wade] was at fault in communicating the statements; and [she] suffered harm because of the statements.

(ECF No 11, ¶ 35).

In his Motion for Partial Dismissal, Mr. Wade points to these two assertions and argues that "it is wholly unclear as what – if any – statements made by [Mr. Wade] are to be construed as defamatory." Further he argues that "[Ms.] Foster's Counterclaim fails to reference the allegedly defamatory statements, [she] failed to specify who made the comments, when they were made, the context in which they were made, whether the statements were made to a third party, whether the statements were written or oral, and, generally, failed to set forth any manner whatsoever the words which [Ms. Foster claimed] were actionable so as to give [him] notice of the statements at issue." (ECF No. 18-1, page 12-13). Similarly, he argues that Ms. Foster has failed to show any such statements had subjected her to scorn, hatred, contempt, ridicule, or that she suffered any actual harm. Furthermore, Mr. Wade asserts that the statements that he made as a part of the Complaint in the instant litigation cannot serve as the basis of a Counterclaim for defamation because such statements are protected by the doctrine of absolute judicial privilege.

Again seeking to cure these alleged deficiencies, Ms. Foster's Amended Counterclaim added several critical allegations to her claim for defamation. Specifically, she asserted that

> 24. After the events which occurred on or about July 20, 2016 Wade's attorney, acting under Wade's direction and instructions, sent letters to three persons, none of whom is a party to this lawsuit, falsely claiming that Foster had lied about Wade engaging in unconsented sexual activity with Wade. At least one of these letters was sent in the first half of May 2017. That letter referred to Foster's statements about the sexual assault as "lies."
>
> 25. In about the first half of 2017 on his "FetLife" page, an internet forum, Wade personally posted the following statement referring to the sexual assault incident: "[Foster's] allegation is false. She told a lie to her husband, and it grew into something bigger." The post further stated that "[s]he [Foster] crafted her story well, and spun the details skillfully to suit her lie."

13

> 26. On information and belief, during the period from August 2016 through the present Wade has made other written false statements (other than statements to his attorneys or to a court) asserting that Foster falsely asserted that he sexually assaulted her.
>
> 27. On information and belief, during the period from August 2016 through the present Wade has made false oral statements to persons (other than statements to his attorneys or a court) asserting that Foster falsely asserted that he sexually assaulted her.
>
> * * *
>
> 31. Because of Wade's conduct Foster suffered severe damages, including severe emotional distress which required significant professional mental health treatment, harm to reputation and economic injuries.

(ECF No. 25-Amended Counterclaim, ¶¶ 24-27, 31).

The Court finds that these new additions meet the federal pleading standards and cure the defects outlined in Mr. Wade's Motion for Partial Dismissal. To begin with, Ms. Foster has provided Mr. Wade with notice of specific facts of the alleged communications that serve as the basis for her defamation claim. While paragraphs 26 and 27 of the Amended Counterclaim are limited on the details and circumstances of the alleged statements contained therein, paragraph 25, on the other hand, sets forth in considerable detail the time, place/forum, content, speaker/author, manner, and audience of these statements. Ms. Foster has also pled sufficient facts showing that Mr. Wade knew the statements to be false and that she suffered emotional and economic injuries/damages in the form of lost professional opportunities to perform in Burlesque shows, costs associated with obtaining mental health treatment, as well as the pain and suffering from an inability to take part in her daily activities and routine.

As it relates to paragraph 24 of the Amended Counterclaim, however, the Court will reserve judgment on whether the statements that were allegedly offered via letter correspondence by Mr. Wade's attorney, at Mr. Wade's request, to persons who are not currently parties to the

litigation, may serve as the basis for a claim of defamation. The Court is reluctant to rule on this issue at this juncture because the application of the judicial privilege doctrine varies significantly based upon considerations not yet established by the record in this case, such as who were the parties to the communication, what was the nature of the communication, and was the communication related to the ongoing litigation.

The Maryland Court of Appeals has explained that "the application of an absolute privilege differs depending on whether the putative tortfeasor is a witness/ party/ judge, or an attorney of record in the case." Norman v. Borison, 17 A.3d 697, 708 (Md. 2011). There are "at least three situations implicating" this protection of absolute privilege: (1) statements made in a judicial proceeding, (2) statements made in a quasi-judicial proceeding, and (3) statements made extrinsic to a quasi-judicial proceeding. Id. at 708-711. Here, the alleged communications, which Ms. Foster states were made by Plaintiff's counsel at the behest of Mr. Wade, could implicate either the first or third situations, as at the time of these communications (at least one of them was made in the first half of May 2017) the present law suit, which was commenced on May 17, 2017, was already on going.

As it relates to the first of these categories (statements made in a judicial proceeding), the Court of Appeals has observed that "for witnesses, parties, and judges," the "English rule" is employed, whereby "the putative tortfeasor enjoys absolute immunity from civil liability, even if the statement is wholly unrelated to the underlying proceeding." Id. at 708-709. However, "[f]or attorneys whose appearances are entered in a case," Maryland law follows the majority "American rule," and requires "that the defamatory statement have some rational relation to the matter at bar before unfurling the umbrella of absolute privilege." Id. at 709. This privilege, the Maryland Court explained, "extends not only to defamatory statements made in the courtroom

15

during the course of the trial, but also to such statements published in documents which have been filed in a judicial proceeding." Id. (citing Adams v. Peck, 415 A.2d 292, 293 (Md. 1980)).

As it relates to this third category or situation (where absolute privilege may apply to some statements made extrinsic to a judicial or quasi-judicial proceeding) the Court of Appeals has explained that these privileged extrinsic statements occur in three sub-categories: (1) statements made with the direct purpose or effect of producing a judicial or quasi-judicial proceeding; (2) statements "prepared for possible use in connection with a pending judicial proceeding, but which remain unfiled at the time of the alleged injury"; and (3) statements that are not designed necessarily to produce a proceeding or cause one to be "filed," but which are connected contextually to a pending or ongoing proceeding. Long v. Welch & Rushe, Inc., 28 F. Supp. 3d 446, 459 (D. Md. 2014) (citing Norman, 17 A.3d at 711-715).

Without delving into further explanation of these sub-categories or the doctrine of absolute judicial privilege, and unable to determine the exact nature and circumstances of the communications alleged in paragraph 24 of the Amended Counterclaim, the Court will reserve judgment on whether the alleged communications are protected by the doctrine of absolute judicial privilege. As stated above, the exact nature and circumstances of the communications alleged in paragraph 24—who they involved and what significant they may have had—is not yet clear.

In sum, the Court finds that Ms. Foster's Amended Counterclaim contains sufficient facts that address the deficiencies set forth in Mr. Wade's Motion for Partial Dismissal. As a result, Mr. Wade's first Motion for Partial Dismissal (ECF No. 18) is MOOT, and Mr. Wade's second Motion for Partial Dismissal (ECF No. 28) is DENIED. However, as indicated above, the Court casts no judgment on whether the communications alluded to in paragraph 24 of the Amended

Counterclaim implicate the doctrine of absolute judicial privilege. The parties are invited to raise this issue again, once details about these communications become available.


Dated: August 21, 2017                                              /s/

                                                            J. Mark Coulson
                                                            United States Magistrate Judge